# REGISTER OF ACTIONS
## CASE NO. D-202-CV-2025-05416

| | |
|---|---|
| Melinda Van Stone, et al., v. Quivera Estates Homeowners Association Inc, et al. | §<br>§<br>§<br>§<br>§<br>§ |

|  |  |
|---|---|
| Case Type: | Civil Violations, Statutes, Ordinances |
| Date Filed: | 06/13/2025 |
| Location: | |
| Judicial Officer: | Franchini, Nancy J. |

### PARTY INFORMATION

|  |  | Attorneys |
|---|---|---|
| Defendant | Hart-York, Roger | |
| Defendant | Quivera Estates Homeowners Association Inc<br>  P.O. Box 67590<br>  Albuquerque, NM 87193 | |
| Defendant | Wong, Charles | |
| Plaintiff | Ismail, Mahmoud | Aaqib S Khan<br>*Retained*<br>281-725-4971(W) |
| Plaintiff | Van Stone, Melinda | Aaqib S Khan<br>*Retained*<br>281-725-4971(W) |

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | | |
|---|---|---|---|
| 06/13/2025 | **Cause Of Actions**<br>Action Type | Statutes, Ordinance Violations, Miscellaneous Action | |
| 06/13/2025 | **OPN: COMPLAINT** | | |
| 06/13/2025 | **JURY DEMAND 6 PERSON** | | |
| 06/13/2025 | **ARB: CERT NOT SUBJECT** | | |
| 06/17/2025 | Summons | | |
| | Quivera Estates Homeowners Association Inc | Served<br>Response Due<br>Returned | 06/20/2025<br>07/21/2025<br>06/30/2025 |
| | Wong, Charles | Served<br>Response Due<br>Returned | 06/20/2025<br>07/21/2025<br>06/30/2025 |
| | Hart-York, Roger | Served<br>Response Due<br>Returned | 06/20/2025<br>07/21/2025<br>06/30/2025 |
| 06/30/2025 | **SUMMONS RETURN** | | |
| 06/30/2025 | **SUMMONS RETURN** | | |
| 06/30/2025 | **SUMMONS RETURN** | | |

### FINANCIAL INFORMATION

| | | |
|---|---|---|
| **Plaintiff** Van Stone, Melinda | | |
| Total Financial Assessment | | 282.00 |
| Total Payments and Credits | | 282.00 |
| **Balance Due as of 07/18/2025** | | **0.00** |

| | | | | |
|---|---|---|---|---|
| 06/17/2025 | Transaction Assessment | | | 282.00 |
| 06/17/2025 | File & Serve Payment | Receipt # ALBD-2025-15335 | Van Stone, Melinda | (282.00) |

EXHIBIT 1

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
6/13/2025 4:33 PM
KATINA WATSON
CLERK OF THE COURT
Marissa Marquez

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

MELINDA VAN STONE and
MAHMOUD ISMAIL,

        Plaintiffs,

v.

QUIVERA ESTATES HOMEOWNERS
ASSOCIATION INC.,
CHARLES WONG, and
ROGER HART-YORK,

        Defendant.

No.     D-202-CV-2025-05416
Judge   Franchini, Nancy J.

## COMPLAINT

**COME NOW,** Plaintiffs Melinda Van Stone and Mahmoud Ismail, by and through their attorneys of record, Salcedo & Company, LLC (Isidro Salcedo, Esq., and Aaqib Khan, Esq.), and hereby submit their Complaint against Defendants Quivera Estates Homeowners Association Inc., Charles Wong, and Roger Hart-York by stating as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Melinda Van Stone is a resident of Bernalillo County, New Mexico.

2. Plaintiff Mahmoud Ismail is a resident of Bernalillo County, New Mexico.

3. Defendant Quivera Estates Homeowners Association Inc. is a non-profit corporation created under the laws of the State of New Mexico, with its principal place of business and headquarters in Bernalillo County, New Mexico.

4. Defendant Charles Wong is a resident of Bernalillo County, New Mexico.

5. Defendant Roger Hart-York is a resident of Bernalillo County, New Mexico.

1

6. In this Complaint, all torts, violations, and other misconduct occurred in Bernalillo County, New Mexico.

7. Therefore, the Second Judicial District Court has subject matter jurisdiction over the claims and personal jurisdiction over the parties in this case.

8. The Second Judicial District Court is the proper venue pursuant to NMSA 1978, Section 38-3-1(A) (1875, as amended through 1988).

## GENERAL ALLEGATIONS

9. Melinda Van Stone owns real property located at 8204 Via Encantada NE, Albuquerque, NM 87122 (the "Van Stone Property"), which is her primary residence.

10. Mahmoud Ismail owns real property located at 8109 Via Encantada, Albuquerque, NM 87122 (the "Ismail Property"), which is his primary residence.

11. The Van Stone Property and the Ismail Property are located within the boundaries of Quivera Estates subdivision, which is under the control of Quivera Estates Homeowners Association Inc. ("Quivera Estates").

12. Shortly before Ismail and his family moved into Quivera Estates, Van Stone interacted with a board member and representative of Quivera Estates who unapologetically exhibited hateful and discriminatory behavior by expressing disdain over Ismail's racial and religious background.

13. Specifically, when Quivera Estates learned that Ismail and his family are Muslim, and that they originate from a foreign country, there was a clear expression of distaste towards them.

14. Quivera Estates' distaste with Ismail's religion and race resulted in discriminatory enforcement practices against him, which are described in more detail below.

15. Quivera Estates also exhibited threatening and intimidating behavior towards Plaintiff Melinda Van Stone for speaking out against this discrimination.

16. On March 29, 2024, Quivera Estates issued a 'letter of violation' to Ismail for installing a "visible" air conditioning unit on the Ismail Property. See Ex. 1.

17. On several occasions, Ismail has been demeaned and harassed for installing his air conditioning unit. Specifically, Defendant Charles Wong, board member of Quivera Estates, harassed Ismail's contractors when they were working on the AC unit.

18. Several other properties within Quivera Estates have air conditioning units and other objects installed in a similar manner, including that of Defendant Charles Wong, president of Quivera Estates at the time that the allegations in the Complaint occurred, and Defendant Roger Hart-York. However, those homeowners have not been fined for their air conditioning unit installations. See Ex. 2.

19. One of Quivera Estates' board members has an air conditioning unit installed in a similar manner to the unit installed on the Ismail Property, but the board member has not been harassed, demeaned, or fined for the air conditioning unit. See Ex. 3.

20. Plaintiff Van Stone witnessed the discrimination against Ismail and felt compelled to stand up against it.

21. Van Stone was warned for notifying her neighbors about Quivera Estates' discriminatory practices targeting Ismail.

22. Quivera Estates warned Van Stone for allegedly disturbing the peace.

23. Van Stone has been issued violations for having a shed on her property. She was also issued a violation and/or warning for speaking up against Plaintiff Mahmoud Ismail's discrimination. See Ex. 4.

3

24. Van Stone was not aware that simply speaking out against discrimination could possibly amount to a violation, especially because it was done in a reasonable manner.

25. Therefore, the warning for disturbing the peace was merely pretext to punish Van Stone for discussing Quivera Estates' discriminatory practices with her neighbors.

26. Defendant Charles Wong has also made demeaning and verbally harassing comments towards Plaintiff Melinda Van Stone and her household members, including abusive statements regarding her weight and medical conditions.

27. Defendant Roger Hart-York has made demeaning and verbally offensive comments and expressions towards one or more Plaintiffs, including disdain for Plaintiff Mahmoud Ismail's identity.

28. Quivera Estates, Charles Wong, and Roger Hart-York will continue to discriminate against Ismail, given Defendants' hatred for his race and religion and their discriminatory conduct against him.

29. Compounding the egregiousness of these discriminatory practices, Quivera Estates will continue to target anyone who dares to speak out against its discrimination.

30. Mahmoud's neighbor also got a violation letter for his flag after speaking against the Board.

31. In fact, Quivera Estates targeted Van Stone in two other instances.

32. In the first instance, Van Stone displayed a political flag on her property.

33. Although other homeowners in the subdivision flew or displayed political flags on their properties, Quivera Estates only forced Van Stone to remove the political flag from her property, while allowing the other homeowners to continue to fly and display their political flags. See Ex. 5.

34. In the second instance, Quivera Estates refused to provide financial records to Van Stone when she requested them. See Ex. 6.

35. All homeowners in Quivera Estates subdivision are entitled to inspect the homeowner association's financial records; however, Van Stone is not aware of any other homeowner but her being refused access to these financial records.

36. While not as thinly veiled as the fine for disturbing the peace, these two additional targeted actions against Van Stone seem to be at the very least connected or associated with Van Stone's decision to speak out against Quivera Estates' discrimination against Ismail.

37. Quivera Estates' discriminatory practices have interfered and will continue to interfere with Ismail and Van Stone's quiet and peaceful enjoyment of their properties.

38. Because they cannot peacefully and quietly enjoy their own homes, Quivera Estates' discriminatory practices have caused and will continue to cause Ismail and Van Stone emotional distress and mental anguish.

39. While Quivera Estates should have never targeted Ismail and Van Stone with its discriminatory fines, enforcement, and actions, Ismail and Van Stone were stunned to learn that Quivera Estates targeted them using fraudulent and invalid bylaws.

40. Extending beyond its discriminatory practices, Quivera Estates assessed fees, enforced rules, and used procedures under these fraudulently created bylaws.

41. Thus, not only has Quivera Estates discriminated against and targeted Ismail and Van Stone, but it exercised authority it never lawfully possessed to control and discipline Ismail and Van Stone.

**COUNT I: VIOLATION OF FEDERAL FAIR HOUSING ACT**

42. Plaintiffs incorporate Paragraphs 1-41 of this Complaint by reference, as if fully set forth herein.

43. Under the Federal Fair Housing Act (FHA), it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, **or in the provision of services or facilities in connection therewith**, because of race, color, religion, sex, familial status, or national origin." 42 USCA § 3604(B) (emphasis added).

44. "At its core, the FHA guarantees tenants and homeowners a right to take and enjoy possession of a home free from discrimination based on a protected characteristic, including religion." Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, Inc., 104 F.4th 1128 (9th Cir. 2024).

45. The United States Department of Housing and Urban Development (HUD) and the Department of Justice recognized that the FHA applies broadly, and covers "individuals, corporations, associations and others involved in the provision of housing and residential lending, including property owners, housing managers, **homeowners and condominium associations**, lenders, real estate agents, and brokerage services." Joint Statement of the Dep't of Housing and Urban Dev. and the Dep't of Justice, Reasonable Accommodations Under the Fair Housing Act (May 17, 2004) ("HUD and DOJ Joint Statement"), at 3, https://www.hud.gov/sites/documents/DOC_7771.PDF.

46. Pursuant to the HUD and DOJ's Joint Statement, Defendant Quivera Estates is a homeowner's association that is covered under the Federal Fair Housing Act.

47. Quivera Estates acts as a non-profit corporation that provides services and facilities in connection with the terms, conditions, or privileges of sale of dwellings.

6

48. Here, Plaintiff Mahmoud Ismail has experienced shocking discrimination based on protected characteristics (i.e. race and religion) from Quivera Estates.

49. Plaintiff Mahmoud Ismail cannot enjoy possession of his home unless the possession is free from Quivera Estates' discriminatory conduct.

50. Further, the Federal Fair Housing Act states that "[i]t hall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account **of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section** 3603, **3604,** 3605, or 3606 of this title." 42 USCA § 3617 (emphasis added).

51. Unquestionably, Defendant Quivera Estates imposed fines against Plaintiff Melinda Van Stone to intimidate, threaten, and interfere with her encouragement of Plaintiff Mahmoud Ismail's exercise and enjoyment of rights protected by Section 3604 of the Federal Fair Housing Act.

52. Considering Quivera Estates' blatantly discriminatory conduct, Quivera Estates has utterly abused the powers that it purports to have over the services and facilities that it provides in connection with the dwellings in its jurisdiction, and thus, has squarely violated Section 3604(B) of the Federal Fair Housing Act.

53. Further, considering Quivera Estates' use of fines to intimidate, threaten, and interfere with Melinda Van Stone's encouragement of Plaintiff Mahmoud's protected rights under Section 3604, Quivera Estates has squarely violated Section 3617 of the Federal Fair Housing Act.

54. Therefore, pursuant to 42 USCA § 3613(C)(1), Plaintiffs seek actual damages, including restitution damages for discriminatory fines and fees, damages for mental anguish, and damages for emotional distress.

55. Quivera Estates' discriminatory conduct was and is intentional, malicious, and/or undertaken with reckless or callous disregard of or indifference to Plaintiffs' rights.

56. Quivera Estates' attitude and motive in targeting Plaintiffs, as well as the nature of the discriminatory actions, also warrant punitive damages to deter Quivera Estates from engaging in future illegal conduct.

57. Plaintiffs also seek permanent injunctive relief in the form of being relieved and entirely separated from the regulation and control of Quivera Estates Homeowners Association Inc.

58. Pursuant to 42 USCA § 3613(C)(2), Plaintiffs seek reimbursement of all reasonable attorney's fees and costs incurred in pursuit of and related to this litigation.

## COUNT II: FRAUD

59. Plaintiffs incorporate Paragraphs 1-58 of this Complaint by reference as if fully set forth herein.

60. Under New Mexico law, "[a]n action brought under common law fraud requires: (1) that a representation was made as a statement of fact which was untrue and known to be untrue by the party making it, or else recklessly made; (2) that it was made with *intent to deceive* and for the purpose of inducing the other party to act upon it; and (3) that the other party did in fact *rely* on it and (4) was induced thereby to act to his *injury* or damage." Galloway v. New Mexico Off. of Superintendent of Ins., No. S-1-SC-39522, 2025 WL 52537 at 9 (N.M. Jan. 9, 2025); see also Cain v. Champion Window Co. of Albuquerque, LLC, 2007-NMCA-085, ¶ 22, 142 N.M. 209, 164 P.3d 90.

61. Here, Defendant Quivera Estates misrepresented to Plaintiffs that Quivera Estates had the power and authority to govern as a homeowner's association, despite the fact that, at all times relevant to these claims, Quivera Estates was not in compliance with the New Mexico

8

Nonprofit Corporations Act because it did not duly execute its bylaws. See NMSA 1978, § 53-8-12(B) (1975, as amended through 2003) ("The initial bylaws and any subsequent bylaws whether by amendment, repeal or new adoption shall be executed by two authorized officers of the corporation. The bylaws in effect for the corporation shall be maintained at the corporation's principal office in New Mexico and shall be subject to inspection and copying by the public. If the most recently adopted bylaws are so maintained, they shall not be void, notwithstanding any requirements of prior law.").

62. Quivera Estates misrepresented its authority and power over Plaintiffs, and charged Plaintiffs fines and fees, despite not having the power to do so, because the bylaws under which it improperly sourced its authority from were unenforceable at all times relevant to the allegations and claims set forth in this Complaint.

63. This misrepresentation was uncovered when Plaintiff Van Stone exercised her right to inspect and copy the bylaws pursuant to § 53-8-12(B).

64. Upon doing so, Plaintiff Van Stone received a copy of backdated and fraudulent bylaws that were supposedly signed and executed on June 12, 2004; however, the notary stamp on the bylaws indicated that the Notary Public's commission expires on July 31, 2027. See Ex. 7.

65. Under New Mexico law, a notary's commission is issued for a term of four (4) years. See NMSA 1978, § 14-14A-20(E) (2021, as amended through 2023).

66. Therefore, the bylaws could not have possibly been signed and executed in 2004, considering that the notary's commission expires in 2027.

67. Quivera Estates fraudulently backdated the bylaws by thirteen (13) years to deceive Plaintiffs into believing that Quivera Estates had power and authority over them at all

instances when they charged them, fined them, and exercised control over their properties for the past thirteen (13) years.

68. Plaintiffs relied on this misrepresentation, and as a result of this reliance, Quivera Estates has improperly taken at least $7,095.00 from Plaintiffs in the form of fraudulently levied fines and fees.

69. Accordingly, Plaintiffs claim $7,095.00 in damages and additional damages in amounts to determined at trial.

70. Quivera Estates' fraud was willful, wanton, malicious, reckless, and/or oppressive; therefore, Plaintiffs should also be awarded punitive damages.

71. However, monetary damages are insufficient because Quivera Estates continues to operate and levy fines and fees under fraudulently created bylaws. See Scott v. Jordan, 1983-NMCA-022, ¶ 33, 99 N.M. 567, 661 P.2d 59 ("Monetary damages are inadequate where the harm is continuing in its nature. Where damages would not be an adequate compensation for the injury injunctive relief is proper.").

72. Due to the continuing nature of Quivera Estates' fraud, Plaintiffs request permanent injunctive relief in the form of being relieved and entirely separated from the regulation and control of Quivera Estates Homeowners Association Inc.

## COUNT III: LIQUIDATION ASSETS AND AFFAIRS OF NONPROFIT CORPORATION

73. Plaintiffs incorporate Paragraphs 1-72 of this Complaint by reference as if fully set forth herein.

74. Plaintiffs are members of Quivera Estates Homeowners Association Inc.

75. "District courts shall have full power to liquidate the assets and affairs of a [nonprofit] corporation[] . . . in an action by a member . . . when it is made to appear that . . . the acts

of the directors or those in control of the corporation are . . . oppressive or fraudulent . . . ." NMSA 1978, § 53-16-16(A)(1)(c) (1967).

76. As stated in greater detail above, Quivera Estates fraudulently backdated the bylaws by thirteen (13) years to deceive Plaintiffs into believing that Quivera Estates had power and authority over them at all instances when they fraudulently and oppressively charged them, fined them, and exercised control over their properties for the past thirteen (13) years.

77. Due to the extensive and continuous oppressive and fraudulent actions, Plaintiffs request a court order liquidating the assets and affairs of Defendant Quivera Estates Homeowners Association Inc.

78. After notice and hearing, Plaintiffs ask the Court to appoint a receiver authorized to collect, sell, convey, and dispose of all or any part of the assets of Defendant Quivera Estates wherever situated and, then, apply and distribute the resulting funds according to NMSA 1978, Section 53-8-56(C) (1975).

79. Plaintiffs have incurred and continue to incur attorney's fees and costs to obtain liquidation of Defendant Quivera Estates' assets and business affairs.

80. Pursuant to Section 53-8-56(D), Plaintiffs ask the Court to direct payment of their attorney's fees and costs from the assets of Defendant or the proceeds of any sale or disposition of the assets.

**COUNT IV: VIOLATION OF HOMEOWNER ASSOCIATION ACT (FLAGS)**

81. Plaintiffs incorporate Paragraphs 1-80 of this Complaint by reference as if fully set forth herein.

82. Pursuant to Section 47-16-16 of the New Mexico Homeowner Association Act, "[a]n association shall not adopt or enforce a restriction related to the flying or displaying of

11

flags that is more restrictive than the applicable federal or state law or county or municipal ordinance."

83. "The flying of a flag is expressive conduct protected from governmental regulation by the First Amendment to the United States Constitution." <u>Sons of S. Cross, Inc. v. Hurst</u>, 582 F. Supp. 3d 614 (W.D. Ark. 2022) (citing <u>Spence v. Washington</u>, 418 U.S. 405, 410, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) ("The Court for decades has recognized the communicative connotations of the use of flags. In many of their uses flags are a form of symbolism comprising a 'primitive but effective way of communicating ideas ...,' and 'a shortcut from mind to mind.' ")).

84. Here, Plaintiff Melinda Van Stone exercised her First Amendment Constitutional right to fly a political flag on her property.

85. By suppressing Plaintiff's First Amendment Constitutional right to fly a flag, Defendant Quivera Estates adopted and/or enforced a restriction that is more restrictive than applicable federal law.

86. As such, Quivera Estates' conduct squarely violated the Flag provision of the New Mexico Homeowner Association Act.

87. Accordingly, Plaintiff Melinda Van Stone seeks punitive damages for Quivera Estates' egregious conduct in continuously violating Plaintiff's basic First Amendment Constitutional rights since October 2, 2024, without showing any intentions of respecting the law and resolving their behavior.

88. Plaintiff Melinda Van Stone also seeks injunctive relief in the form of being relieved and entirely separated from the jurisdiction and control of Quivera Estates Homeowners Association Inc.

## COUNT V: VIOLATION OF HOMEOWNER ASSOCIATION ACT
## (RECORD DISCLOSURE)

89. Plaintiffs incorporate Paragraphs 1-88 of this Complaint by reference as if fully set forth herein.

90. Pursuant to Section 47-16-5(D) of the New Mexico Homeowner Association Act, "[t]he failure of an association to provide access to the financial and other records within ten business days after receipt of a written request creates a rebuttable presumption that the association willfully failed to comply with the Homeowner Association Act. A lot owner that is denied access to financial and other records is entitled to the greater of the actual damages incurred for the association's willful failure to comply with this subsection or fifty dollars ($50.00) per calendar day, starting on the eleventh business day after the association's receipt of the written request."

91. Plaintiff Van Stone submitted a written request to access HOA records to Defendant Quivera Estates on May 30, 2024.

92. To date, Plaintiff Van Stone has not received the entire set of records that she requested.

93. As such, because at least 330 days have passed since the eleventh business day after the association's receipt of Plaintiff's written request, Plaintiff has incurred at least **$16,500** in statutory damages, an amount that is increasing with each passing day.

## COUNT VI: INJUNCTIVE RELIEF

94. Plaintiffs incorporate Paragraphs 1-94 of this Complaint by reference as if fully set forth herein.

95. Under New Mexico law, "[I]njunctions are harsh and drastic remedies ... that ... should issue only in extreme cases of pressing necessity and only where there is a showing of irreparable injury for which there is no adequate and complete remedy at law." Leonard

13

v. Payday Pro./Bio-Cal Comp., 2008-NMCA-034, ¶ 14, 143 N.M. 637, 179 P.3d 1245

(quoting Scott v. Jordan, 99 N.M. 567, 572, 661 P.2d 59, 64 (Ct.App.1983)).

96. Plaintiffs seek injunctive relief against Defendants Charles Wong and Roger Hart-York,

in their capacities as representatives and/or agents of Quivera Estates, because no other

adequate legal remedies exist to prevent them from continuing their verbally harassing or

abusive conduct against Plaintiffs.

97. Plaintiffs have suffered, and continue to suffer, substantial emotional trauma and mental

anguish as a result of Defendants Charles Wong and Roger Hart York's verbally

harassing, abusive, and discriminatory conduct.

98. Plaintiffs' suffering will continue unless the Court issues an Order forever estopping

Defendants Charles Wong and Roger Hart-York from engaging in such egregious

conduct, and decreeing that Defendants Charles Wong and Roger Hart-York terminate all

contact with and maintain a safe distance from Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court issue the

following judgment and provide the following relief:

A. Award Plaintiffs damages in an amount to be determined at trial;

B. Award Plaintiffs punitive damages in an amount that the Court deems just and proper;

C. Grant Plaintiffs permanent injunctive relief in the form of being relieved and entirely

separated from the regulation and control of Defendant Quivera Estates Homeowners

Association Inc.;

D. Liquidate the assets and affairs of Defendant Quivera Estates Homeowners Association

Inc., according to the procedures outlined in Section 53-8-56;

E. Grant the above-specified injunctive relief against Defendants Charles Wong and Roger Hart-York;

F. Award Plaintiffs reasonable attorney's fees and costs; and

G. Award Plaintiffs any other and further relief that the Court deems just and appropriate.

Respectfully submitted,

**SALCEDO & COMPANY, LLC**

*/s/ Aaqib Khan*
Isidro Salcedo, Esq., Bar No. 150622
Aaqib Khan, Esq., Bar No. 162822
*Attorneys for Plaintiffs*
2990 N. Main St., Ste. 2D
Las Cruces, NM 88001
(575) 993-2676
isidro@salcedoco.com
aaqib@salcedoco.com

QUIVERA ESTATES HOMEOWNERS ASSOCIATION INC
8700A Education PL NW
Albuquerque, NM 87114
505-888-4479

## FIRST NOTICE: NON-COMPLIANCE

March 29, 2024

MAHMOUD M. ISMAIL and RAWAN MAALI
8109 VIA ENCANTADA
ALBUQUERQUE, NM 87122

RE: Account # 144100121    8109 VIA ENCANTADA

Dear MAHMOUD M. ISMAIL and RAWAN MAALI:

Living in a community association, such as QUIVERA ESTATES (441), offers many advantages, but at the same time imposes certain restrictions. These restrictions are not meant as an inconvenience or an invasion of your freedom, but rather as a means of promoting harmony within QUIVERA ESTATES (441). Our records indicate you previously received a Courtesy Notice regarding a violation to the CC&Rs for QUIVERA ESTATES (441). During an inspection of the community, it was noted that the violation still remains, as follows:

**Architectural Control: ARC APPROVAL REQUIRED.**
CC&Rs – Section 13 – Temporary Buildings|CC&Rs – Section 6 – Compliance with the Grading Plan & Development Plan|CC&Rs – Section A |CC&Rs – Section B: No improvement of a temporary character, such as a shack, barn, basement, trailer, tent, garage or other outbuilding, mobile home, or motor home, shall be used on any Lot at any time as a Dwelling, either temporarily or permanently. No Dwelling placed or erected on a Lot shall be occupied in any manner at any time prior to its being fully completed; provided, however, that this provision shall not prevent the occupancy and use of improvements on a Lot for residential purposes while additions, modifications, or alterations are being made to a completed Dwelling pursuant to plans and specifications duly approved by the Committee.
Notwithstanding anything to the contrary, any Lot may be used for a sales office, model home complex, or storage and construction yard during the initial construction of a Dwelling and the sales period. All such temporary uses must have the prior approval of the Committee, which shall establish the requirements for such uses. |All Improvements constructed on each Lot shall comply with the City of Albuquerque approved "Grading Plan" and "Development Plan" for the Subdivision. No Lot may be landscaped or re-graded in such a manner as to cause the drainage characteristics of the Lot to differ significantly from the grading plan for the Subdivision approved by, and on file with, the City of Albuquerque Engineering Department (the "Drainage Report"). In no case may the drainage from one Lot drain on to any other Lot, except as allowed by the Drainage Report. All plans and specifications submitted to the Committee must contain sufficient information to enable the Committee to determine compliance with the Grading Plan and Development Plan. However, the Committee shall not be liable to the Owner or any other person for approval of plans, which are contrary to the Grading Plan and Development Plan.

EX. 1

It is the responsibility of the Owner that all improvements built on each Lot are in compliance with the soils report for the Subdivision, a copy of which is available at the office of Declarant. If the improvement is a building which is to be built on any portion of a Lot outside the prepared pad, the improvement must be built on controlled fill dirt. |A.   Plans and specifications shall clearly show the nature of the work or installation proposed and location on the Lot, which shall include elevations and sufficient description of materials, textures, etc., as shall enable the Committee to determine whether the construction, reconstruction or alteration of improvements will harmonize with the architectural style of the Subdivision and the external design of existing structures within the Subdivision; and |No improvements of any kind, or alteration, painting, or texturing thereof, shall be permitted, or ever be, erected, constructed, installed, placed or maintained on a Lot, unless and until the final plans, specifications and elevations shall have written approval of the Committee..

Action to Resolve:  We've noticed you've installed a new AC system without prior approval from the Quivera Estates ARC. All exterior changes to architecture or landscaping are required to be approved before starting the project. It's not too late to submit a request. Please contact your Community Manager Rebecca Hicks at RHicks@hoamco.com for an Approval Request Form or if you have any questions. We thank you for your cooperation.

Your efforts to correct the above item within fourteen (14) days are greatly appreciated. Please understand it is in the best interest of all homeowners who have a vested interest in QUIVERA ESTATES (441) that a community-wide standard be adhered to in order to present a neat, attractive, and well-manicured community.

If you have questions regarding this matter, please do not hesitate to contact me at 505–888–4479 or email me: FChabala@hoamco.com.

Respectfully,

Frank Chabala
On behalf of the Board of Directors

cc:  Board, Resident
Lot #:






EX. 2







EX. 3

QUIVERA ESTATES HOMEOWNERS ASSOCIATION INC
8700A Education PL NW
Albuquerque, NM 87114
505–888–4479

## FIRST NOTICE: NON-COMPLIANCE

August 26, 2024

KEVIN and MELINDA VAN STONE
8204 VIA ENCANTADA N
ALBUQUERQUE, NM 87122

RE:  Account # 144100060    8204 VIA ENCANTADA

Dear KEVIN and MELINDA VAN STONE:

Living in a community association, such as QUIVERA ESTATES (441), offers many advantages, but at the same time imposes certain restrictions. These restrictions are not meant as an inconvenience or an invasion of your freedom, but rather as a means of promoting harmony within QUIVERA ESTATES (441). Our records indicate you previously received a Courtesy Notice regarding a violation to the CC&Rs for QUIVERA ESTATES (441). During an inspection of the community, it was noted that the violation still remains, as follows:

**Architectural Control: ARC APPROVAL REQUIRED.**
**CC&Rs – Section 13 – Temporary Buildings|CC&Rs – Section 6 – Compliance with the Grading Plan & Development Plan|CC&Rs – Section A |CC&Rs – Section B: No Improvement of a temporary character, such as a shack, barn, basement, trailer, tent, garage or other outbuilding, mobile home, or motor home, shall be used on any Lot at any time as a Dwelling, either temporarily or permanently. No Dwelling placed or erected on a Lot shall be occupied in any manner at any time prior to its being fully completed; provided, however, that this provision shall not prevent the occupancy and use of Improvements on a Lot for residential purposes while additions, modifications, or alterations are being made to a completed Dwelling pursuant to plans and specifications duly approved by the Committee.**
**Notwithstanding anything to the contrary, any Lot may be used for a sales office, model home complex, or storage and construction yard during the initial construction of a Dwelling and the sales period. All such temporary uses must have the prior approval of the Committee, which shall establish the requirements for such uses. |All Improvements constructed on each Lot shall comply with the City of Albuquerque approved "Grading Plan" and "Development Plan" for the Subdivision. No Lot may be landscaped or re–graded in such a manner as to cause the drainage characteristics of the Lot to differ significantly from the grading plan for the Subdivision approved by, and on file with, the City of Albuquerque Engineering Department (the "Drainage Report"). In no case may the drainage from one Lot drain on to any other Lot, except as allowed by the Drainage Report. All plans and specifications submitted to the Committee must contain sufficient information to enable the Committee to determine compliance with the Grading Plan and Development Plan. However, the Committee shall not be liable to the Owner or any other person for approval of plans, which are contrary to the Grading Plan and Development Plan.**

# EX. 4

It is the responsibility of the Owner that all Improvements built on each Lot are in compliance with the soils report for the Subdivision, a copy of which is available at the office of Declarant. If the Improvement is a building which is to be built on any portion of a Lot outside the prepared pad, the Improvement must be built on controled fill dirt. |A.   Plans and specifications shall clearly show the nature of the work or installation proposed and location on the Lot, which shall include elevations and sufficient description of materials, textures, etc., as shall enable the Committee to determine whether the construction, reconstruction or alteration of improvements will harmonize with the architectural style of the Subdivision and the external design of existing structures within the Subdivision; and

|No Improvements of any kind, or alteration, painting, or texturing thereof, shall be permitted, or ever be, erected, constructed, installed, placed or maintained on a Lot, unless and until the final plans, specifications and elevations shall have written approval of the Committee..

Action to Resolve:  We've noticed you've installed this shed without prior approval. All additional structures are required to be approved before completion. Please contact your Community Manager Rebecca Hicks at RHicks@hoamco.com for an approval request form, or if you have any questions. We thank you for your cooperation.

Your efforts to correct the above item within fourteen (14) days are greatly appreciated. Please understand it is in the best interest of all homeowners who have a vested interest in QUIVERA ESTATES (441) that a community-wide standard be adhered to in order to present a neat, attractive, and well-manicured community.

If you have questions regarding this matter, please do not hesitate to contact me at 505–888–4479 or email me: FChabala@hoamco.com.

Respectfully,



Frank Chabala
On behalf of the Board of Directors

cc:  Board, Resident
Lot #:

QUIVERA ESTATES HOMEOWNERS ASSOCIATION INC
8700A Education PL NW
Albuquerque, NM 87114
505–888–4479

## FIRST NOTICE: NON-COMPLIANCE

August 26, 2024

KEVIN and MELINDA VAN STONE
8204 VIA ENCANTADA N
ALBUQUERQUE, NM 87122

RE: Account # 144100060    8204 VIA ENCANTADA

Dear KEVIN and MELINDA VAN STONE:

Living in a community association, such as QUIVERA ESTATES (441), offers many advantages, but at the same time imposes certain restrictions. These restrictions are not meant as an inconvenience or an invasion of your freedom, but rather as a means of promoting harmony within QUIVERA ESTATES (441). Our records indicate you previously received a Courtesy Notice regarding a violation to the CC&Rs for QUIVERA ESTATES (441). During an inspection of the community, it was noted that the violation still remains, as follows:

**Outside Nuisances: Political Signs/Banners.**
**CC&Rs – Section 24 – Billboards, Poster–Boards, and Advertising: The construction and/or maintenance of billboards, poster–boards, and advertising structures of any kind on any part of any Lot is prohibited, except that real estate agents and/or the Owner of a Lot may display one (1) temporary "For Sale" sign or one (1) "Open House" sign on any Lot. The sum of the length and width of such signs shall not exceed sixty inches (60"). Declarant and the initial builder of the Improvements on each Lot shall be exempt from the requirements of this Paragraph 24. .**
**Action to Resolve:  Please remove this political sign from public view. We thank you for your cooperation.**

Your efforts to correct the above item within fourteen (14) days are greatly appreciated.
Please understand it is in the best interest of all homeowners who have a vested interest
in QUIVERA ESTATES (441) that a community-wide standard be adhered to in order to
present a neat, attractive, and well-manicured community.

If you have questions regarding this matter, please do not hesitate to contact me at 505–888–4479 or email me: FChabala@hoamco.com.

Respectfully,



Frank Chabala
On behalf of the Board of Directors

cc: Board, Resident
Lot #:

QUIVERA ESTATES HOMEOWNERS ASSOCIATION INC
8700A Education PL NW
Albuquerque, NM 87114
505–888–4479

## SECOND NOTICE: NON-COMPLIANCE

September 9, 2024

KEVIN and MELINDA VAN STONE
8204 VIA ENCANTADA N
ALBUQUERQUE, NM 87122

RE:  Account # 144100060       8204 VIA ENCANTADA

Dear KEVIN and MELINDA VAN STONE:

Living in a community association, such as QUIVERA ESTATES (441), offers many advantages, but at the same time imposes certain restrictions. These restrictions are not meant as an inconvenience or an invasion of your freedom, but rather as a means of promoting harmony within QUIVERA ESTATES (441). Our records indicate you previously received two notices regarding a violation to the CC&Rs for QUIVERA ESTATES (441). During an inspection of the community, it was noted that the violation still remains, as follows:

**Outside Nuisances: Political Signs/Banners.**
**CC&Rs – Section 24 – Billboards, Poster–Boards, and Advertising: The construction and/or maintenance of billboards, poster–boards, and advertising structures of any kind on any part of any Lot is prohibited, except that real estate agents and/or the Owner of a Lot may display one (1) temporary "For Sale" sign or one (1) "Open House" sign on any Lot. The sum of the length and width of such signs shall not exceed sixty inches (60"). Declarant and the initial builder of the Improvements on each Lot shall be exempt from the requirements of this Paragraph 24. .**
**Action to Resolve:  Please remove this political sign from public view. We thank you for your cooperation.**

Your efforts to correct the above item within fourteen (14) days are greatly appreciated. Please understand it is in the best interest of all homeowners who have a vested interest in QUIVERA ESTATES (441) that a community-wide standard be adhered to in order to present a neat, attractive, and well-manicured community.

If you have questions regarding this matter, please do not hesitate to contact me at 505–888–4479 or email me: FChabala@hoamco.com.

EX. 5

Respectfully,



Frank Chabala
On behalf of the Board of Directors

cc: Board, Resident
Lot #:

 Gmail

Aaqib Khan <aaqib@salcedoco.com>

### Fwd: Yesterday's request

MELINDA Van Stone <melindaustin@aol.com>                                                    Wed, Mar 12, 2025 at 11:14 PM
To: Aaqib Khan <Aaqib@salcedoco.com>

Info sent to Justine. In the email I sent to Rebecca Hicks on 9-15-24, I addressed that we knew they fraudulently created bylaws (and the new addendum). The very next day they had their HOA/HOAMCO attorney email me a cease and desist letter to try to shut me up about the fraudulent bylaws. They clearly made up a fake story and did not give time/date/names because they likely knew I could prove where I was. Almost everywhere I went had security cameras from my home to my office. They just wanted to intimidate me because I was pointing out that they were breaking laws. After I got the letter from their attorney I hired Justine and her response letter shut them up. I'm sure their attorney is hoping we don't file a complaint with the bar but we should and I believe a complaint could be filed with the Real Estate Oversight Board that HOAMCO gets it's license through. These people have no problem targeting people they don't like or whom point out they are breaking laws. This is a misuse of our HOA due money. If you want to ask for a copy of the entire file it should have the new accounting but there is well over $100k in there and they just voted to increase our dues. Maybe if they weren't misusing them they would have plenty. That money is not supposed to be used to wrongfully harass residents that point out they are breaking laws.

> Begin forwarded message:
>
> **From:** MELINDA Van Stone <melindaustin@aol.com>
> **Subject: Fwd: Yesterday's request**
> **Date:** September 17, 2024 at 11:36:14 AM MDT
> **To:** Justine Fox-Young <justine@foxyounglaw.com>
>
> So this email requesting information from the management company yesterday was to get information for the Governor's appointed worker coming Thursday. I had already requested a lot of this back in June and they absolutely refuse to provide them to me. Instead they had their attorney send that letter. It's clear that they know we intend to sue them over all this harassment and infringement on our civil rights (along with the loss of income and medical issues resulting from it all). Since it was hard to tell who the VP was on the backdated bylaws I asked for that info along with who all had what title since that is really standard info they should clearly provide but it's not on any of the records that we've seen. They just list names of all board members and that's it other than some documents mention Charles Wong as President. I recognize Jennifer Taylor's signature as her name but the VP is likely Cody McGarry who apparently got off the board right after the backdated bylaws were provided and I pointed out that they were not done 20 years ago as it is dated. Cody is a dentist who owns Comfort Dental. Charles owns Majestic construction, and Jennifer is school health aid but I understand from others that she works at North Star Elementary. Her husband Jeremy owns a septic company and he's on the ACC. Even if all their false allegations were true, they still would have a duty to provide this information to me within ten days. They simply don't want to because they know a lawsuit is coming.

>> Begin forwarded message:
>>
>> **From:** MELINDA Van Stone <melindaustin@aol.com>
>> **Date:** September 15, 2024 at 6:17:54 PM MDT
>> **To:** Rebecca Hicks <hicks@hoamco.com>, Kevin <kevin_vanstone@yahoo.com>
>> **Cc:** M I <mismail2@gmail.com>

EX. 6

Attn Ms Hicks,

Who was the President, Secretary/Treasurer and Vice President of the Board that signed the Bylaws which were provided to members of our HOA and an attorney in June of 2024 (this year) by HOAMCO? These are the Bylaws that were provided after I requested them of you and you said they were working on signing a set. Can you clarify for me who all was involved in the signing of these Bylaws, including but not limited to, the board members?

Please also provide for me the current titles of each remaining board member as none of us can find any clarification of that, such as Vice President etc.

We noticed that the document records provided by HOAMCO that a lot were missing. One thing we would like you to provide for us is the proof of election notices showing when they were sent out to each member, the notice of who was running before the result of the election was finalized and the tally of votes for each board member and the members who ran but did not get on the board. We need this for the elections for the past 3 election cycles which HOAMCO was the property management company that oversaw our HOA elections.

Please confirm for us if the board members still have to approve violation letters sent to homeowners which was the case in 2019 per the board vote and which board members or if anyone at HOAMCO other than Mr. Chabala approved the violation letters to be sent. Also, did HOAMCO review the VALID governing documents to see if they matched up with the wording that Mr. Chabala puts in his violation letters and check to see if they are violating members rights, civil, state and federal?

I did not see the copy of HOAMCO's insurance companies name and information as I had requested. Please forward that.

I did not see the legally required certifications of each board member who has been acting as a board member for our HOA while under HOAMCO's management of it anywhere in the provided documents. Please forward all of those to us.

Sincerely, Melinda Van Stone

# BYLAW RESOLUTION FOR

## QÜIVERA ESTATES HOMEOWNERS ASSOCIATION, INC.

WHEREAS, the Declaration of Restrictive and Protective Covenants for Quivera Estates was recorded on September 9, 2004, in the official records of Bernalillo County, New Mexico as Instrument No. 2004127660 (the "Declaration");

WHEREAS, Section 26 of the Declaration states that "[f]he Association shall be a New Mexico non-profit corporation which shall be controlled by the articles of incorporation and bylaws thereof.";

WHEREAS, the Bylaws of Quivera Estates Homeowners Association, Inc. (the "Bylaws") attached hereto were drafted in 2004;

WHEREAS, Quivera Estates Homeowners Association, Inc. (the "Association") is governed by the Nonprofit Corporation Act;

WHEREAS, Section 53-8-12 of the Nonprofit Corporation Act states, "The initial bylaws of a corporation shall be adopted by its board of directors.";

WHEREAS, Section 53-8-12 of the Nonprofit Corporation Act also states, "The power to alter, amend or repeal the bylaws or adopt new bylaws shall be vested in the board of directors unless otherwise provided in the articles of incorporation or the bylaws.',

WHEREAS, Article VII of the Bylaws of the Association provides that the "Bylaws may be amended at any regular or special meeting of the Board by majority vote of the directors present at such meeting.'';

WHEREAS, the Articles of Incorporation do not address the method of amending the Bylaws, so they do not provide a method for amending the Bylaws that differs from Section 53-8-12 of the Nonprofit Corporation Act;

WHEREAS, the Association has provided the Bylaws to new Owners as a part of the Disclosure Certificate required by the Homeowner Association Act;

WHEREAS, the Association has been operating according to the Bylaws since the Association's inception;

WHEREAS, the Association is not in possession of a signed copy of the Bylaws; and

WHEREAS, the Board of Directors desires to have a signed version of the Bylaws to fulfill corporate formalities.

NOW, THEREFORE, the Board of Directors hereby adopts the following resolution:

EX. 7

The Board of Direct0fs of the Quivera Estates Homeowners Association, Inc. hereby adopts and ratifies the Bylaws attached hereto that have been in use by the Association since its inception and have been provided to every Owner at the time of the purchase of a Lot in the community.

The Bylaws have been effective and have been applied by the Association since its inception but will now be signed by two offlcers of the Board to fulfill corporate formalities.

This Resolution was adopted by the unanimous written consent of the Board of Directors on ,
_____ 2024.



sident

By: _____
Secretary

2

## BYLAWS

## QUIVER-A ESTATES HOMEOWNERS ASSOCIATION, INC.

QUIVERA ESTATES HOMEOWNERS ASSOCIATION, INC., a New Mexico non-profit Corporation, does hereby adopt the following bylaws which shall govern the administration of the QUIVERA ESTATES SUBDIVISION, County of Bernalillo, State ofNew Mexico.

## ARTICLE 1

## DEFNITIONS

Section 1. "ASSOCIATION" means and refers to QUIVERA ESTATES HOMEOWNERS ASSOCIATION, INC., its successors and assigns.

Section 2. "BOARD" means the Board of Directors of the Association.

Section 3. "COMMON AREA" means the Security Gate, Private Roads and any other areas of the Subdivision to be owned and/or managed by the Association pursuant to the Declaration or recorded plat of the Subdivision.

Section 4. "DECLARANT" means and refers to Alpha Equities, LLC, a New Mexico limited liability company.

Section 5. "DECLARATION" means the Declaration of Covenants, Conditions and Restrictions to be filed for record in Bernalillo County, New Mexico, and any supplemental declaration.

Section 6. "DWELLING" shall mean any building or a portion of a building situated on a Lot designed and intended for use by occupancy as a single family residence.

Section 7. "IMPROVEMENTS" shall include, without limitation, buildings, out-buildings (including sheds and störage buildings), roads driveways, parking areas, fences, gates, retaining walls, stairs, decks, windbreaks, poles, antennas, signs, utility or communication installations (whether above or underground), and any structure and excavation of any type or kind,

Section 8. "LOT(S)" shall mean any one of the parcels numbered 1-12, Block l; 1-12, Block 2 and 1-18, Block 3 inclusive, as shown on the Subdivision Plat of Quivera Estates, filed in the Office of the County Clerk of Bernalillo County, New Mexico, on June 3, 2004, in Book 2004C, Page 173, as Document No, 2004076851.

Section 9. "MEMBER" means and refers to every person or entity who holds membership in the Association.

Section 10. "OWNER" shall mean the persons or entities, including Declarant, holding legal title or beneficial ownership of the fee, including the purchaser of a Lot under an installment sales contract of a Lot, or a lessee of a Lot pursuant to a leasehold agreement of a term of twenty (20) years or greater. Owner shall not include a seller of a Lot under an installment sales contract of a Lot or the lessor of a Lot pursuant to a leasehold agreement with a term of twenty (20) years or greater.

f:\clients\1700\1785\061\docs\20041102ByLawsNew.doc\blk

Section 11 . "PARTY WALLS" shall mean the walls constructed on Lot lines between Lots.

Section 12. "PERIMETER WALLS" shall mean the wall constructed by Declarant or its successor on the perimeter of the Subdivision.

Section 13. "PLAT" shall mean the Subdivision Plat of Quivera Estates, filed in the Office of the County Clerk of Bernalillo County, New Mexico, on June 3, 2004, in Book 2004C, Page 173, as Document No. 2004076851, and all amendments and revisions thereto.

Section 14. "PLAT EASEMENT NOTES" shall mean the "Keyed Notes - New Easements" on the Plat.

Section 15. "PONDING AREA" shall mean the following described real property located in the County of Bernalillo, State of New Mexico, to-wit:

Lots numbered One (l), Two (2), in Block numbered Seventeen (17), Tract One (l), Unit Three (3) of NORTH ALBUQUERQUE ACRES, a Subdivision in Bernalillo County, New Mexico, as the same is shown and designated on the Map of said Subdivision, filed in the office of the County Clerk of Bernalillo County, New Mexico on Septem ber 10, 193 1, in Plat Book D, folio 121.

Section 16. "PRIVATE ROADS" shall mean Via Alegre, Via Insolita, Via Asombro, Via Encantada, Camino Etero, Via Distinto, which are also described as Tract A of the Subdivision. .

Section 17. "PRIVATE STORM DRAINAGE EASEMENTS" shall mean the private storm drainage easements shown on the Plat Easement Notes as number 9.

Section 18. "PROPERTY" means the property subject to the Declaration.

Section 19. "REGULATIONS" means rules promulgated by the Board from time to time in the manner permitted by the Articles of Incorporation and the Bylaws of the Association.

Section 20. "SECURITY GATE" shall mean the gates on the intersection of Via Insolita, NE and Modesto Avenue, NE, on the southern portion of the Subdivision, and the gate on the intersection of Via Distinto, NE and Glendale Avenue, NE, on the northern portion of the Subdivision.

Section 21. "SUBDIVISION" means Quivera Estates Subdivision, County of Bernalillo, New Mexico.

# ARTICLE 11

## MEMBERSHIP AND VOTING RIGHTS IN THE ASSOCIATION

**Section 1. MEMBERSHIP.** Every person or entity who is an Owner of any Lot shall be a Member of the Association. No Owner shall have more than one membership. Membership shall be appurtenant to and may not be separated from the ownership of any Lot. Ownership of a Lot shall be the sole qualification for membership.

**Section 2. VOTING RIGHTS.** The Association shall have one (1) class of voting membership. Members shall be entitled to one (1) vote for each Lot in which they hold the interest required for Membership. When more than one (l) person or entity holds such interest or interests in any Lot, all such persons or entities shall be Members and the vote for such Lot shall be exercised as they among themselves determine, but in no event shall more than one (1) vote be cast with respect to any such Lot.

**Section 3. PROXIES.** Members may vote in person or by proxy. Each proxy shall be in writing, dated, signed and filed with the Secretary prior to the meeting for which it is to be effective. Proxies shall be deemed delivered to the Secretary, if delivered by personal delivery, U.S. Mail or facsimile to the Secretary, any Board member or to the professional management agent, if any. Unless otherwise provided in the proxy, a proxy shall cover all votes which the Member giving such proxy is entitled to cast, and in the event of any conflict between two (2) or more proxies purporting to cover the same voting rights, the later dated proxy shall prevail. If dated as of the same date, both proxies shall be deemed invalid. No proxy shall be valid more than twenty-five (25) months after its execution. The proxy of any member shall be revocable and shall automatically cease upon conveyance of such Member's Lot.

# ARTICLE 111

## ASSESSMENTS

**Section 1. ANNUAL ASSESSMENTS.** The Owners of each Lot shall be liable for the payment of "Annual Assessments".

    a.    The Annual Assessments shall be fixed, established and collected from time to time as hereinafter provided. The Annual Assessments, together with such interest thereon and costs of collection thereof as hereinafter provided, shall be a charge on the Lot and shall be a continuing lien upon the Lot against which each Annual Assessment is made. The Annual Assessments and costs shall also be the personal obligation of each person, or entity who was the Owner of the Lot when the Annual Assessment became due.

    b.    The Annual Assessments shall be used exclusively for the Private Roads, Ponding Area, Security Gate, the exteriors of the Perimeter Walls and other Common Area expenses, including maintenance, repairs, snow removal, reconstruction or replacement thereof and utility bills related to the operation of the Security Gate.

3

lients\1700\1785\061\docs\20041102ByLawsNew.doc\blk

C.    The initial Annual Assessments shall be Six Hundred Dollars ($600.00) and Annual Assessments shall be due and payable on January I of each year and shall be delinquent each February 1 if not paid in full. The initial Annual Assessments shall be prorated and paid by the initial purchaser of each Lot from Declarant at the time of closing. The initial Annual Assessments may be increased by the Board annually by an amount not to exceed twenty percent (20%) of the prior year's Annual Assessments. If the Annual Assessments are to be increased by more than twenty percent (20%) from the previous year's annual assessments, said increase must be approved by the affirmative vote of not less than two-thirds (2/3) of the Members of the Association at a meeting held for the purpose of    . determining said Annual Assessments, which meeting shall be called at least thirty (30) days in advance thereof, except in the event of an emergency. The Board may provide for the payment of Annual Assessments by installment on a quarterly or semi-annual basis. If during any year the Board determines that the Annual Assessments are insufficient to cover the Association expenses during said year, the Board may increase the Annual Assessments to an amount not to exceed twenty percent (20%) of the prior year's Annual Assessments.

d. Written notice of the Annual Assessments shah be sent to every Member by the Board at the time of its determination. The Association shall, upon demand at any time, furnish to a Member a certificate in writing signed by an officer designated by the Board as the one responsible for keeping the records, setting forth whether the Annual Assessment has been paid. Such certificate shall be conclusive evidence of payment of any Annual Assessment therein stated to have been paid.

e.If any installment of an Annual Assessment is not paid within thirty (30) days after it is due, then such Annual Assessment shall become delinquent and shall, together with interest thereon, and the cost of collection thereof as provided herein, become a continuing lien on the Lot which shall bind such Lot in the hands of the then Owner thereof. The personal obligation of the then Owner to pay such Annual Assessment, however, shall remain his personal obligation for the statutory period and shall not pass to his successors in title until expressly assumed by them. If the Annual Assessment is not paid within thirty (30) days after the due date, a reasonable late charge may be assessed at the discretion of the Board and the Annual Assessment shall bear interest from the date of delinquency at the rate of eighteen percent (18%) per annum until paid, and the Association may bring an action at law against the Owner personally obligated to pay the same or to foreclose the lien against the Lot, and in the event a judgment is obtained, such judgment shall include interest on the assessment as above provided, reasonable attorney's fees to be fixed by the court, together with the costs of the action.

f.The lien of the Annual Assessments shall be subordinate to the lien of any first mortgage placed upon the Lot in good faith and for value; however, such subordination applies only to the Annual Assessments due before the sale or

transfer of the Lot pursuant to a decree of foreclosure, or any transfer in lieu of foreclosure. The sale or transfer does not relieve the Lot from the liability for or lien of Annual Assessments thereafter becoming due,

Section 2. SPECIAL ASSESSNfiENTS, The Association may also levy "Special Assessments" for the purpose of defraying, in whole or in part, the cost of any non-recurring maintenance, or the acquisition, construction, reconstruction, repair or replacement of a capital improvement upon any of the Common Areas, including fixtures and personal property. A Special Assessment shall require the affirmative vote or written consent of two-thirds (2/3) of the Members of the Association at a meeting held for the purpose of determining said Special Assessment, which meeting shall be called at least thirty (30) days in advance thereof, except in the event of an emergency." The Special Assessments shall be due and payable within thirty (30) days of billing therefor by the Board, shall bear interest, be a lien and be enforceable in the same manner as Annual Assessments.

## ARTICLE IV

## MEETINGS

The annual meeting of the Members shall be held during November of every year in Albuquerque, New Mexico, at the time and placed fixed by the Board in the notice mailed to each Member. Special meetings of the Members may be called by the Board, the President or Members entitled to vote at least fifty percent (50%) of the votes of any class of membership. A quorum of the Members owning ten percent (10%) of the Lots shall be required for any annual or special meeting of the Members, provided however, so long as the Declarant owns at least one Lot, the presence of the Declarant at any duly called meeting of the Members shall constitute a quorum.

## ARTICLE V

## BOARD OF DIRECTORS

Section 1. NUMBER AND TENURE, The property and affairs ofthe Association shall be managed by the Board. The first Board will consist of the three (3) directors named in the Articles and will serve until the first annual meeting of Members, at which time a new Board consisting of three (3) directors will be elected by the Members and thereafter, the Board will consist of three (3) directors to be élected annually, unless changed pursuant to the terms hereof.

Section 2. QUALIFICATION, REMOVAL, VACANCIES. Directors must be Members ofthe Association. Directors will hold office until their successors are elected and qualify. A director may be removed with or without cause upon a majority vote of the Directors for persistent failure to attend regular meetings of the Board. In the event of death, resignation or removal of a director, his successor shall be selected by the remaining Members of the Board and shall serve for the unexpired term of his predecessor.

f:\clients\1700\1785\061\docs\20041102ByLawsNew.doc\blk
Section 3. COMPENSATION. Directors shall not be paid for services rendered as a director, but shall be entitled to receive reimbursement for actual expenses incurred in the performance of their duties,

Section 4, <u>MEETINGS OF THE BOARD</u>. The annual meeting of the Board will be held immediately following the annual meeting of the Members. Regular meetings of the Board may be called by the President or any two (2) directors by giving written notice to each director at least three (3) days prior to such special meeting. Such notice of special meeting shall specify the time, place and purpose of the meeting.

Section 5. <u>ACTION BY BOARD</u>. The directors may only act as a Board. The Board may act by majority vote of the directors present at a duly called meeting at which a quorum is present. A majority of the directors then in office present in person constitutes a quorum. The Board may also act without a meeting, but only by unanimous consent in writing executed by all directors then in office.

Section 6. <u>NOMINATION OF DIRECTORS</u>. Nominations for election of the Board shall be made by the nominating committee, if so appointed, or Members, at least twenty (20) days prior to the annual meeting of Members. Such nominations shall be delivered to the Secretary. The nominating committee may make as many nominations as it desires, but shall nominate not less than the number of directorships to be filled. Such nominations shall be made from among the Members of the Association. If there are no nominations for one or more of the directorships made twenty (20) days prior to the annual meeting, nominations will be accepted from the floor at the annual meeting.

Section 7. <u>ELECTION OF DIRECTORS</u>. The Secretary will prepare a ballot describing the vacancies to be filled, setting forth the nominees selected by the nominating committee or Members, and providing a space for a write-in vote for each vacancy. Each Member or proxy holder will be entitled to one vote per Lot for each directorship to be filled. The names receiving the largest number of votes will be elected as directors. Any controversy as to the validity of any ballot or the right of any Member or proxy holder to vote will be determined by the Board. The Board may conduct voting by written ballot mailed to each Member with the notice of the annual meeting, which ballots must be signed and returned to the Board, not later than the date and time of the annual meeting.

Section 8. <u>POWERS AND DUTIES OF BOARD</u>.

(a)     The Board shall have the following powers:

(1)     To call special meetings of the Members at its discretion;

(2)     To enter into such contracts with third parties as it deems necessary and desirable for the discharge of its duties, including management services, the maintenance, repair and restoration of the Private Roads, Security Gate, the exteriors of the Perimeter Walls and other Common Area improvements;

(3)     To appoint and remove, at its discretion, all officers, agents and employees of the Association, to fix their compensation, and to require of them such security or fidelity bond as may be deemed expedient;

f:\clients\1700\1785\061\docs\20041102ByLawsNew.doc\blk

6

(4)     To establish, levy, assess and collect Annual Assessments and special assessments as permitted herein and by the Declaration;

(5)     To adopt and publish rules and regulations governing the use of the Private Roads, Security Gate, the other Common Area and the personal conduct of the Members and their guests related thereto;

(6)     To engage or employ attorneys, accountants and such other professional assistance as may be deemed necessary;

(7)     To bring such suits in the name of the Association at law or in equity, as may be deemed necessary to enforce the covenants, conditions and restrictions set forth in the Declaration; and

(8)     To exercise all powers in the name of the Association set forth in Declaration, Articles, or these Bylaws, except such powers as are reserved to the Members.

(b)     The Board shall have the following duties:

(1)     To maintain a complete record of its actions and corporate affairs and to report thereof at the annual meeting of Members;

(2)     To supervise all officers, agents and employees of the Association;

(3)     To prepare a roster of the Annual Assessments applicable to each Lot to be maintained in the office of the Association and to be kept open for examination by any Member;

(4)     To send written notice of the Annual Assessments to each Member; and

(5)     To issue, or cause to be issued, upon demand by any Member or interested person, a certificate setting forth whether any Annual Assessment or special assessment has been

(6)     To maintain, repair, rebuild and keep in good condition the Private Roads, the exterior of the Perimeter Walls, Ponding Area, Security Gate and other Common Area improvements;

(7)     To pay all valid taxes, liens or other charges against the Private Roads, Security Gate and other Common Area improvements to the extent said amounts are not assessed to individual Lots;

(8)     To maintain fire and hazard insurance, if applicable, and liability insurance on the Private Roads, Security Gate and other Common Area improvements; and

(9)     To perform all other obligations of the Association set forth in the Declaration, Articles, and these Bylaws.

Section 9. COMMITTEES. The Board may appoint the following standing committees, each of which shall consist of a chairman who shall be a director and two (2) Members who shall not be directors

7

f:\clients\1700\1785\061\docs\2004\02ByLawsNew. doe\blk

and each of which shall serve from the close of the annual meeting of Members to the close of the next annual meeting of Members.

(a)    The nominating committee, which shall have the duties set forth in Section 6 of this Article V.

(b)    The maintenance committee, which shall advise the Board of all matters pertaining to maintenance, repair and improvements to the Private Roads, the exteriors of the Perimeter Walls, Security Gate and other Common Area.

(c)    The audit and budget committee, which shall prepare the annual budget for the next ensuing year, approve or disapprove the balance sheet and operating statement for the previous year, and supervise the annual audit of the Association's books. The Treasurer shall serve as an ex-officio member of this committee..

## ARTICLE VI

## OFFICERS

**Section t. ENUMERATION OF OFFICES.** The officers of this Association shall be a President and Vice President, who shall, at all times, be members of the Board, a Secretary, and a Treasurer, and such other officers as the Board may, from time to time, by resolution create.

**Section 2. ELECTION OF OFFICERS.** The election of officers shall take place at the first meeting of the Board following each annual meeting of Members.

**Section 3. TERM.** The officers of this Association shall be elected annually by the Board and each shall hold office for one (1) year unless he shall sooner resign, or shall be removed, or otherwise disqualified to serve.

**Section 4. SPECIAL APPOINTMENTS.** The Board may elect such other officers as the affairs of the Association may require, each of whom shall hold office for such period, have such authority, and perform such duties as the Board may, from time to time, determine.

**Section 5. RESIGNATION AND REMOVAL.** Any officer may be removed from office with or without cause by the Board. Any officer may resign at any time by giving written notice to the Board, the President or the Secretary. Such resignation shall take effect on the date of receipt of such notice or at any later time specified therein, and unless otherwise specified therein the acceptance of such resignation shall not be necessary to make it effective.

**Section 6. VACANCIES.** A vacancy in any office may be filled in the manner prescribed for regular election. The officer elected to such vacancy shall serve for the remainder of the term of the officer he replaces.

**Section 7. MULTIPLE OFFICES.** The offices of the Secretary and Treasurer may be held by the same person. No person shall simultaneously hold more than one of any of the other offices except in the case of special officers created pursuant to Section 4 of this Article.

**Section 8. DUTIES.** The duties of the officers are as follows:

8

f:\clients\1700\1785\061\docs\2004\1102ByLawsNew.doc\bfk

(a)    The PRESIDENT shall preside at all meetings of the Board; see that orders and resolutions of the Board are carried out; sign all leases, mortgages, deeds and other written instruments; and co-sign all checks and promissory notes.

(b)    The VICE PRESIDENT shall act in the place and stead of the President in the event of his absence, inability or refusal to act, and shall exercise and discharge such other duties as may be required of him by the Board.

(c)    The SECRETARY shall record the votes and keep the minutes of all meetings and proceedings of the Board and of the Members; keep the corporate seal of the Association and affix it on all papers requiring said seal; serve notice of meetings of the Board and of the Members; keep appropriate current records showing the Members of the Association together with their addresses; and perform such other duties as required by the Board.

(d)    The TREASURER shall receive and deposit in appropriate bank accounts all monies of the Association and disburse such funds as directed by the resolution of the Board; sign all checks and promissory notes of the Association; keep proper books of account; cause an annual audit of the Association books to be made by a public accountant at the completion of each fiscal year; and prepare an annual budget and a statement of income and expenditures to be presented to the membership at its regular meeting, and deliver a copy of each to the Members.

## ARTICLE VII

## GENERAL PROVISIONS

Section 1. <u>SEAL</u>. The Board may, but need not, adopt a form of seal to be used by the Association.

Section 2. <u>WAIVER OF NOTICE</u>. Any notice of meeting required by the Declaration or these Bylaws will be considered given when mailed to the last address shown by the records of the Association or when delivered. Any such notice requirement will be considered waived by any person who waives notice in writing, either before or after the meeting, or any person who appears at the meeting for any reason other than to contest the validity of the call of the meeting.

Section 3. <u>INDEMNITY</u>. The Association will defend, indemnify' and hold harmless each Member, director, officer or committee member or the Association against expenses and liabilities reasonably incurred in connection with any claim or lawsuit in which such Member, director, officer or committee member is made a party by reason of the performance of his duties in such capacity; provided, however, that this provision does not apply to gross negligence or willful misconduct by the indemnitee.

Section 4. <u>AMENDMENTS</u>. These Bylaws may be amended at any regular or special meeting of the Board by majority vote of the directors present at such meeting; provided, however, that any provision of these Bylaws which is controlled by the Articles or the Declaration may not be amended except as provided in the Articles or the Declaration,

Section S. <u>CONSTRUCTION</u>. In the case of conflict between the Articles and these Bylaws, the Articles shall control. In the case of conflict beßveen the Declaration and these Bylaws, the Declaration shall control.

Section 6. SEVERABILITY. The invalidity of any provision of these Bylaws shall not affect the validity of the remaining provisions of these Bylaws.

## CERTIFICATE

IN WITNESS WHEREOF, we, the undersigned, constituting all the directors of QUIVERA ESTATES HOMEOWNERS ASSOCIATION, INC., hereby certify that the foregoing Bylaws were duly adopted as the Bylaws of QUIVERA ESTATES HOMEOWNERS ASSOCIATION, INC., on .

_____, 2004, at the first meeting of the Board of Direc_____ f said Association.

_____
President/Chairman/Director

_____
Secretary/Treasurer/Director

_____
Vice-President/Director

LILLY THERESA ROBERTSON
**Notary Public**
**State of New Mexico**
Comm. # 2000224
My Comm. Exp. Jul 31, 2027

STATE OF NEW MEXICO

COUNTY OF BERNALILLO

Thi instr                                 ent was ack
                                          ledged before me this

|____ ere ____|  -I-SC          day of ___June___ 2004, by

A .

MY COMMISSION EXPIRES: 7.31.27

NOTARY PUBLIC

LILLY THERESA ROBERTSON
Notary Public
State of New Mexico
Comm. # 2000224
My Comm. Exp. Jul 31, 2027

STATE OF NEW MEXICO     )
                        )
COUNTY OF BERNALILLO     )

This instrument was acknowledged before me this 12 day of June, 2004, by

Lilly Theresa Robertson

f:\clients\1700\1785\061\docs\20041102ByLawsNew.doc\blk

11

BYLAW RESOLUTION

FOR

QUIVERA ESTATES HOMEOWNERS ASSOCIATION, INC.

WHEREAS, the Declaration of Restrictive and Protective Covenants for Quivera Estates was recorded on September 9, 2004, in the official records of Bernalillo County, New Mexico as Instrument No. 2004127660 (the "Declaration");

WHEREAS, Section 26 of the Declaration states that "[t]he Association shall be a New Mexico non-profit corporation which shall be controlled by the articles of incorporation and bylaws thereof.";

WHEREAS, the Bylaws of Quivera Estates Homeowners Association, Inc. (the "Bylaws") attached hereto were drafted in 2004;

WHEREAS, Quivera Estates Homeowners Association, Inc. (the "Association") is governed by the Nonprofit Corporation Act;

WHEREAS, Section 53-8-12 of the Nonprofit Corporation Act states, "The initial bylaws of a corporation shall be adopted by its board of directors.";

WHEREAS, Section 53-8-12 of the Nonprofit Corporation Act also states, "The power to alter, amend or repeal the bylaws or adopt new bylaws shall be vested in the board of directors unless otherwise provided in the articles of incorporation or the bylaws.";

WHEREAS, Article VII of the Bylaws of the Association provides that the "Bylaws may be amended at any regular or special meeting of the Board by majority vote of the directors present at such meeting.";

WHEREAS, the Articles of Incorporation do not address the method of amending the Bylaws, so they do not provide a method for amending the Bylaws that differs from Section 53-8-12 of the Nonprofit Corporation Act;

WHEREAS, the Association has provided the Bylaws to new Owners as a part of the Disclosure Certificate required by the Homeowner Association Act;

WHEREAS, the Association has been operating according to the Bylaws since the Association's inception;

WHEREAS, the Association is not in possession of a signed copy of the Bylaws; and

WHEREAS, the Board of Directors desires to have a signed version of the Bylaws to fulfill corporate formalities.

NOW, THEREFORE, the Board of Directors hereby adopts the following resolution:

1

The Board of Directors of the Quivera Estates Homeowners Association, Inc. hereby adopts and ratifies the Bylaws attached hereto that have been in use by the Association since its inception and have been provided to every Owner at the time of the purchase of a Lot in the community.

The Bylaws have been effective and have been applied by the Association since its inception but will now be signed by two officers of the Board to fulfill corporate formalities.

This Resolution was adopted by the unanimous written consent of the Board of Directors on _____ ____, 2024.

By:_____

President

By:_____

Secretary

2

<u>BYLAWS</u>

<u>OF</u>

<u>QUIVERA ESTATES HOMEOWNERS ASSOCIATION, INC.</u>

QUIVERA ESTATES HOMEOWNERS ASSOCIATION, INC., a New Mexico non-profit Corporation, does hereby adopt the following bylaws which shall govern the administration of the QUIVERA ESTATES SUBDIVISION, County of Bernalillo, State of New Mexico.

ARTICLE I

<u>DEFINITIONS</u>

Section 1. "<u>ASSOCIATION</u>" means and refers to QUIVERA ESTATES HOMEOWNERS ASSOCIATION, INC., its successors and assigns.

Section 2. "<u>BOARD</u>" means the Board of Directors of the Association.

Section 3. "<u>COMMON AREA</u>" means the Security Gate, Private Roads and any other areas of the Subdivision to be owned and/or managed by the Association pursuant to the Declaration or recorded plat of the Subdivision.

Section 4. "<u>DECLARANT</u>" means and refers to Alpha Equities, LLC, a New Mexico limited liability company.

Section 5. "<u>DECLARATION</u>" means the Declaration of Covenants, Conditions and Restrictions to be filed for record in Bernalillo County, New Mexico, and any supplemental declaration.

Section 6. "<u>DWELLING</u>" shall mean any building or a portion of a building situated on a Lot designed and intended for use by occupancy as a single family residence.

Section 7. "<u>IMPROVEMENTS</u>" shall include, without limitation, buildings, out-buildings (including sheds and storage buildings), roads driveways, parking areas, fences, gates, retaining walls, stairs, decks, windbreaks, poles, antennas, signs, utility or communication installations (whether above or underground), and any structure and excavation of any type or kind.

Section 8. "<u>LOT(S)</u>" shall mean any one of the parcels numbered 1-12, Block 1; 1-12, Block 2 and 1-18, Block 3 inclusive, as shown on the Subdivision Plat of Quivera Estates, filed in the Office of the County Clerk of Bernalillo County, New Mexico, on June 3, 2004, in Book 2004C, Page 173, as Document No. 2004076851.

Section 9. "<u>MEMBER</u>" means and refers to every person or entity who holds membership in the Association.

Section 10. "<u>OWNER</u>" shall mean the persons or entities, including Declarant, holding legal title or beneficial ownership of the fee, including the purchaser of a Lot under an installment sales contract of a Lot, or a lessee of a Lot pursuant to a leasehold agreement of a term of twenty (20) years or greater. Owner shall not include a seller of a Lot under an installment sales contract of a Lot or the lessor of a Lot pursuant to a leasehold agreement with a term of twenty (20) years or greater.

Section 11. "PARTY WALLS" shall mean the walls constructed on Lot lines between Lots.

Section 12. "PERIMETER WALLS" shall mean the wall constructed by Declarant or its successor on the perimeter of the Subdivision.

Section 13. "PLAT" shall mean the Subdivision Plat of Quivera Estates, filed in the Office of the County Clerk of Bernalillo County, New Mexico, on June 3, 2004, in Book 2004C, Page 173, as Document No. 2004076851, and all amendments and revisions thereto.

Section 14. "PLAT EASEMENT NOTES" shall mean the "Keyed Notes - New Easements" on the Plat.

Section 15. "PONDING AREA" shall mean the following described real property located in the County of Bernalillo, State of New Mexico, to-wit:

Lots numbered One (1), Two (2), in Block numbered Seventeen (17), Tract One (1), Unit Three (3) of NORTH ALBUQUERQUE ACRES, a Subdivision in Bernalillo County, New Mexico, as the same is shown and designated on the Map of said Subdivision, filed in the office of the County Clerk of Bernalillo County, New Mexico on September 10, 1931, in Plat Book D, folio 121.

Section 16. "PRIVATE ROADS" shall mean Via Alegre, Via Insolita, Via Asombro, Via Encantada, Camino Etero, Via Distinto, which are also described as Tract A of the Subdivision.

Section 17. "PRIVATE STORM DRAINAGE EASEMENTS" shall mean the private storm drainage easements shown on the Plat Easement Notes as number 9.

Section 18. "PROPERTY" means the property subject to the Declaration.

Section 19. "REGULATIONS" means rules promulgated by the Board from time to time in the manner permitted by the Articles of Incorporation and the Bylaws of the Association.

Section 20. "SECURITY GATE" shall mean the gates on the intersection of Via Insolita, NE and Modesto Avenue, NE, on the southern portion of the Subdivision, and the gate on the intersection of Via Distinto, NE and Glendale Avenue, NE, on the northern portion of the Subdivision.

Section 21. "SUBDIVSION" means Quivera Estates Subdivision, County of Bernalillo, New Mexico.

## ARTICLE II

## MEMBERSHIP AND VOTING RIGHTS IN THE ASSOCIATION

Section 1. MEMBERSHIP. Every person or entity who is an Owner of any Lot shall be a Member of the Association. No Owner shall have more than one membership. Membership shall be appurtenant to and may not be separated from the ownership of any Lot. Ownership of a Lot shall be the sole qualification for membership.

Section 2. VOTING RIGHTS. The Association shall have one (1) class of voting membership. Members shall be entitled to one (1) vote for each Lot in which they hold the interest required for Membership. When more than one (1) person or entity holds such interest or interests in any Lot, all such persons or entities shall be Members and the vote for such Lot shall be exercised as they among themselves determine, but in no event shall more than one (1) vote be cast with respect to any such Lot.

Section 3. PROXIES. Members may vote in person or by proxy. Each proxy shall be in writing, dated, signed and filed with the Secretary prior to the meeting for which it is to be effective. Proxies shall be deemed delivered to the Secretary, if delivered by personal delivery, U.S. Mail or facsimile to the Secretary, any Board member or to the professional management agent, if any. Unless otherwise provided in the proxy, a proxy shall cover all votes which the Member giving such proxy is entitled to cast, and in the event of any conflict between two (2) or more proxies purporting to cover the same voting rights, the later dated proxy shall prevail. If dated as of the same date, both proxies shall be deemed invalid. No proxy shall be valid more than twenty-five (25) months after its execution. The proxy of any member shall be revocable and shall automatically cease upon conveyance of such Member's Lot.

## ARTICLE III

## ASSESSMENTS

Section 1. ANNUAL ASSESSMENTS. The Owners of each Lot shall be liable for the payment of "Annual Assessments".

    a.    The Annual Assessments shall be fixed, established and collected from time to time as hereinafter provided. The Annual Assessments, together with such interest thereon and costs of collection thereof as hereinafter provided, shall be a charge on the Lot and shall be a continuing lien upon the Lot against which each Annual Assessment is made. The Annual Assessments and costs shall also be the personal obligation of each person, or entity who was the Owner of the Lot when the Annual Assessment became due.

    b.    The Annual Assessments shall be used exclusively for the Private Roads, Ponding Area, Security Gate, the exteriors of the Perimeter Walls and other Common Area expenses, including maintenance, repairs, snow removal, reconstruction or replacement thereof and utility bills related to the operation of the Security Gate.

c.  The initial Annual Assessments shall be Six Hundred Dollars ($600.00) and Annual Assessments shall be due and payable on January 1 of each year and shall be delinquent each February 1 if not paid in full.  The initial Annual Assessments shall be prorated and paid by the initial purchaser of each Lot from Declarant at the time of closing.  The initial Annual Assessments may be increased by the Board annually by an amount not to exceed twenty percent (20%) of the prior year's Annual Assessments.  If the Annual Assessments are to be increased by more than twenty percent (20%) from the previous year's annual assessments, said increase must be approved by the affirmative vote of not less than two-thirds (2/3) of the Members of the Association at a meeting held for the purpose of determining said Annual Assessments, which meeting shall be called at least thirty (30) days in advance thereof, except in the event of an emergency.  The Board may provide for the payment of Annual Assessments by installment on a quarterly or semi-annual basis.  If during any year the Board determines that the Annual Assessments are insufficient to cover the Association expenses during said year, the Board may increase the Annual Assessments to an amount not to exceed twenty percent (20%) of the prior year's Annual Assessments.

d.  Written notice of the Annual Assessments shall be sent to every Member by the Board at the time of its determination.  The Association shall, upon demand at any time, furnish to a Member a certificate in writing signed by an officer designated by the Board as the one responsible for keeping the records, setting forth whether the Annual Assessment has been paid.  Such certificate shall be conclusive evidence of payment of any Annual Assessment therein stated to have been paid.

e.  If any installment of an Annual Assessment is not paid within thirty (30) days after it is due, then such Annual Assessment shall become delinquent and shall, together with interest thereon, and the cost of collection thereof as provided herein, become a continuing lien on the Lot which shall bind such Lot in the hands of the then Owner thereof.  The personal obligation of the then Owner to pay such Annual Assessment, however, shall remain his personal obligation for the statutory period and shall not pass to his successors in title until expressly assumed by them.  If the Annual Assessment is not paid within thirty (30) days after the due date, a reasonable late charge may be assessed at the discretion of the Board and the Annual Assessment shall bear interest from the date of delinquency at the rate of eighteen percent (18%) per annum until paid, and the Association may bring an action at law against the Owner personally obligated to pay the same or to foreclose the lien against the Lot, and in the event a judgment is obtained, such judgment shall include interest on the assessment as above provided, reasonable attorney's fees to be fixed by the court, together with the costs of the action.

f.  The lien of the Annual Assessments shall be subordinate to the lien of any first mortgage placed upon the Lot in good faith and for value; however, such subordination applies only to the Annual Assessments due before the sale or

transfer of the Lot pursuant to a decree of foreclosure, or any transfer in lieu of foreclosure. The sale or transfer does not relieve the Lot from the liability for or lien of Annual Assessments thereafter becoming due.

Section 2.    SPECIAL ASSESSMENTS. The Association may also levy "Special Assessments" for the purpose of defraying, in whole or in part, the cost of any non-recurring maintenance, or the acquisition, construction, reconstruction, repair or replacement of a capital improvement upon any of the Common Areas, including fixtures and personal property. A Special Assessment shall require the affirmative vote or written consent of two-thirds (2/3) of the Members of the Association at a meeting held for the purpose of determining said Special Assessment, which meeting shall be called at least thirty (30) days in advance thereof, except in the event of an emergency." The Special Assessments shall be due and payable within thirty (30) days of billing therefor by the Board, shall bear interest, be a lien and be enforceable in the same manner as Annual Assessments.

## ARTICLE IV

## MEETINGS

The annual meeting of the Members shall be held during November of every year in Albuquerque, New Mexico, at the time and placed fixed by the Board in the notice mailed to each Member. Special meetings of the Members may be called by the Board, the President or Members entitled to vote at least fifty percent (50%) of the votes of any class of membership. A quorum of the Members owning ten percent (10%) of the Lots shall be required for any annual or special meeting of the Members, provided however, so long as the Declarant owns at least one Lot, the presence of the Declarant at any duly called meeting of the Members shall constitute a quorum.

## ARTICLE V

## BOARD OF DIRECTORS

Section 1. NUMBER AND TENURE. The property and affairs of the Association shall be managed by the Board. The first Board will consist of the three (3) directors named in the Articles and will serve until the first annual meeting of Members, at which time a new Board consisting of three (3) directors will be elected by the Members and thereafter, the Board will consist of three (3) directors to be elected annually, unless changed pursuant to the terms hereof.

Section 2. QUALIFICATION, REMOVAL, VACANCIES. Directors must be Members of the Association. Directors will hold office until their successors are elected and qualify. A director may be removed with or without cause upon a majority vote of the Directors for persistent failure to attend regular meetings of the Board. In the event of death, resignation or removal of a director, his successor shall be selected by the remaining Members of the Board and shall serve for the unexpired term of his predecessor.

Section 3. <u>COMPENSATION.</u> Directors shall not be paid for services rendered as a director, but shall be entitled to receive reimbursement for actual expenses incurred in the performance of their duties.

Section 4. <u>MEETINGS OF THE BOARD.</u> The annual meeting of the Board will be held immediately following the annual meeting of the Members. Regular meetings of the Board may be called by the President or any two (2) directors by giving written notice to each director at least three (3) days prior to such special meeting. Such notice of special meeting shall specify the time, place and purpose of the meeting.

Section 5. <u>ACTION BY BOARD.</u> The directors may only act as a Board. The Board may act by majority vote of the directors present at a duly called meeting at which a quorum is present. A majority of the directors then in office present in person constitutes a quorum. The Board may also act without a meeting, but only by unanimous consent in writing executed by all directors then in office.

Section 6. <u>NOMINATION OF DIRECTORS.</u> Nominations for election of the Board shall be made by the nominating committee, if so appointed, or Members, at least twenty (20) days prior to the annual meeting of Members. Such nominations shall be delivered to the Secretary. The nominating committee may make as many nominations as it desires, but shall nominate not less than the number of directorships to be filled. Such nominations shall be made from among the Members of the Association. If there are no nominations for one or more of the directorships made twenty (20) days prior to the annual meeting, nominations will be accepted from the floor at the annual meeting.

Section 7. <u>ELECTION OF DIRECTORS.</u> The Secretary will prepare a ballot describing the vacancies to be filled, setting forth the nominees selected by the nominating committee or Members, and providing a space for a write-in vote for each vacancy. Each Member or proxy holder will be entitled to one vote per Lot for each directorship to be filled. The names receiving the largest number of votes will be elected as directors. Any controversy as to the validity of any ballot or the right of any Member or proxy holder to vote will be determined by the Board. The Board may conduct voting by written ballot mailed to each Member with the notice of the annual meeting, which ballots must be signed and returned to the Board, not later than the date and time of the annual meeting.

Section 8. <u>POWERS AND DUTIES OF BOARD.</u>

(a)     The Board shall have the following powers:

(1)     To call special meetings of the Members at its discretion;

(2)     To enter into such contracts with third parties as it deems necessary and desirable for the discharge of its duties, including management services, the maintenance, repair and restoration of the Private Roads, Security Gate, the exteriors of the Perimeter Walls and other Common Area improvements;

(3)     To appoint and remove, at its discretion, all officers, agents and employees of the Association, to fix their compensation, and to require of them such security or fidelity bond as may be deemed expedient;

(4)    To establish, levy, assess and collect Annual Assessments and special assessments as permitted herein and by the Declaration;

(5)    To adopt and publish rules and regulations governing the use of the Private Roads, Security Gate, the other Common Area and the personal conduct of the Members and their guests related thereto;

(6)    To engage or employ attorneys, accountants and such other professional assistance as may be deemed necessary;

(7)    To bring such suits in the name of the Association at law or in equity, as may be deemed necessary to enforce the covenants, conditions and restrictions set forth in the Declaration; and

(8)    To exercise all powers in the name of the Association set forth in Declaration, Articles, or these Bylaws, except such powers as are reserved to the Members.

(b)    The Board shall have the following duties:

(1)    To maintain a complete record of its actions and corporate affairs and to report thereof at the annual meeting of Members;

(2)    To supervise all officers, agents and employees of the Association;

(3)    To prepare a roster of the Annual Assessments applicable to each Lot to be maintained in the office of the Association and to be kept open for examination by any Member;

(4)    To send written notice of the Annual Assessments to each Member; and

(5)    To issue, or cause to be issued, upon demand by any Member or interested person, a certificate setting forth whether any Annual Assessment or special assessment has been paid;

(6)    To maintain, repair, rebuild and keep in good condition the Private Roads, the exterior of the Perimeter Walls, Ponding Area, Security Gate and other Common Area improvements;

(7)    To pay all valid taxes, liens or other charges against the Private Roads, Security Gate and other Common Area improvements to the extent said amounts are not assessed to individual Lots;

(8)    To maintain fire and hazard insurance, if applicable, and liability insurance on the Private Roads, Security Gate and other Common Area improvements; and

(9)    To perform all other obligations of the Association set forth in the Declaration, Articles, and these Bylaws.

Section 9. <u>COMMITTEES</u>. The Board may appoint the following standing committees, each of which shall consist of a chairman who shall be a director and two (2) Members who shall not be directors

and each of which shall serve from the close of the annual meeting of Members to the close of the next annual meeting of Members.

(a)    The nominating committee, which shall have the duties set forth in Section 6 of this Article V.

(b)    The maintenance committee, which shall advise the Board of all matters pertaining to maintenance, repair and improvements to the Private Roads, the exteriors of the Perimeter Walls, Security Gate and other Common Area.

(c)    The audit and budget committee, which shall prepare the annual budget for the next ensuing year, approve or disapprove the balance sheet and operating statement for the previous year, and supervise the annual audit of the Association's books. The Treasurer shall serve as an ex-officio member of this committee.

## ARTICLE VI

## OFFICERS

Section 1.  ENUMERATION OF OFFICES.  The officers of this Association shall be a President and Vice President, who shall, at all times, be members of the Board, a Secretary, and a Treasurer, and such other officers as the Board may, from time to time, by resolution create.

Section 2.  ELECTION OF OFFICERS.  The election of officers shall take place at the first meeting of the Board following each annual meeting of Members.

Section 3.  TERM.  The officers of this Association shall be elected annually by the Board and each shall hold office for one (1) year unless he shall sooner resign, or shall be removed, or otherwise disqualified to serve.

Section 4.  SPECIAL APPOINTMENTS.  The Board may elect such other officers as the affairs of the Association may require, each of whom shall hold office for such period, have such authority, and perform such duties as the Board may, from time to time, determine.

Section 5.  RESIGNATION AND REMOVAL.  Any officer may be removed from office with or without cause by the Board.  Any officer may resign at any time by giving written notice to the Board, the President or the Secretary.  Such resignation shall take effect on the date of receipt of such notice or at any later time specified therein, and unless otherwise specified therein the acceptance of such resignation shall not be necessary to make it effective.

Section 6.  VACANCIES.  A vacancy in any office may be filled in the manner prescribed for regular election.  The officer elected to such vacancy shall serve for the remainder of the term of the officer he replaces.

Section 7.  MULTIPLE OFFICES.  The offices of the Secretary and Treasurer may be held by the same person.  No person shall simultaneously hold more than one of any of the other offices except in the case of special officers created pursuant to Section 4 of this Article.

Section 8.  DUTIES.  The duties of the officers are as follows:

(a)   The PRESIDENT shall preside at all meetings of the Board; see that orders and resolutions of the Board are carried out; sign all leases, mortgages, deeds and other written instruments; and co-sign all checks and promissory notes.

(b)   The VICE PRESIDENT shall act in the place and stead of the President in the event of his absence, inability or refusal to act, and shall exercise and discharge such other duties as may be required of him by the Board.

(c)   The SECRETARY shall record the votes and keep the minutes of all meetings and proceedings of the Board and of the Members; keep the corporate seal of the Association and affix it on all papers requiring said seal; serve notice of meetings of the Board and of the Members; keep appropriate current records showing the Members of the Association together with their addresses; and perform such other duties as required by the Board.

(d)   The TREASURER shall receive and deposit in appropriate bank accounts all monies of the Association and disburse such funds as directed by the resolution of the Board; sign all checks and promissory notes of the Association; keep proper books of account; cause an annual audit of the Association books to be made by a public accountant at the completion of each fiscal year; and prepare an annual budget and a statement of income and expenditures to be presented to the membership at its regular meeting, and deliver a copy of each to the Members.

**ARTICLE VII**

**GENERAL PROVISIONS**

Section 1.  SEAL.  The Board may, but need not, adopt a form of seal to be used by the Association.

Section 2.  WAIVER OF NOTICE.  Any notice of meeting required by the Declaration or these Bylaws will be considered given when mailed to the last address shown by the records of the Association or when delivered.  Any such notice requirement will be considered waived by any person who waives notice in writing, either before or after the meeting, or any person who appears at the meeting for any reason other than to contest the validity of the call of the meeting.

Section 3.  INDEMNITY.  The Association will defend, indemnify and hold harmless each Member, director, officer or committee member or the Association against expenses and liabilities reasonably incurred in connection with any claim or lawsuit in which such Member, director, officer or committee member is made a party by reason of the performance of his duties in such capacity; provided, however, that this provision does not apply to gross negligence or willful misconduct by the indemnitee.

Section 4.  AMENDMENTS.  These Bylaws may be amended at any regular or special meeting of the Board by majority vote of the directors present at such meeting; provided, however, that any provision of these Bylaws which is controlled by the Articles or the Declaration may not be amended except as provided in the Articles or the Declaration.

Section 5.  CONSTRUCTION.  In the case of conflict between the Articles and these Bylaws, the Articles shall control.  In the case of conflict between the Declaration and these Bylaws, the Declaration shall control.

Section 6.  <u>SEVERABILITY</u>.  The invalidity of any provision of these Bylaws shall not affect the validity of the remaining provisions of these Bylaws.

<u>CERTIFICATE</u>

IN WITNESS WHEREOF, we, the undersigned, constituting all the directors of QUIVERA ESTATES HOMEOWNERS ASSOCIATION, INC., hereby certify that the foregoing Bylaws were duly adopted as the Bylaws of QUIVERA ESTATES HOMEOWNERS ASSOCIATION, INC., on _____, 2004, at the first meeting of the Board of Directors of said Association.



President/Chairman/Director

Secretary/Treasurer/Director

Vice-President/Director

LILLY THERESA ROBERTSON
Notary Public
State of New Mexico
Comm. # 2000224
My Comm. Exp. Jul 31, 2027

STATE OF NEW MEXICO    )
                        )
COUNTY OF BERNALILLO    )

This instrument was acknowledged before me this 12 day of June, 2004, by Lilly Theresa Robertson.

MY COMMISSION EXPIRES: 7.31.27

_____
NOTARY PUBLIC

LILLY THERESA ROBERTSON
Notary Public
State of New Mexico
Comm. # 2000224
My Comm. Exp. Jul 31, 2027

STATE OF NEW MEXICO    )
                        )
COUNTY OF BERNALILLO    )

This instrument was acknowledged before me this 12 day of June, 2004, by Lilly Theresa Robertson

f:\clients\1700\1785\061\docs\20041102ByLawsNew.doc\blk

10

MY COMMISSION EXPIRES: 7·3|·27

_____
NOTARY PUBLIC

STATE OF NEW MEXICO    )
                        )
COUNTY OF BERNALILLO   )

This instrument was acknowledged before me this 12 day of June , 2004, by

_Lilly Theresa Robertson_

MY COMMISSION EXPIRES: 7·3|·27

_____
NOTARY PUBLIC



LILLY THERESA ROBERTSON
Notary Public
State of New Mexico
Comm. # 2000224
My Comm. Exp. Jul 31, 2027

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
6/13/2025 4:33 PM
KATINA WATSON
CLERK OF THE COURT
Marissa Marquez

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

MELINDA VAN STONE and
MAHMOUD ISMAIL,

        Plaintiffs,

                                      D-202-CV-2025-05416

v.                                  No.
                                  Judge     Franchini, Nancy J.

QUIVERA ESTATES HOMEOWNERS
ASSOCIATION INC.,
CHARLES WONG, and
ROGER HART-YORK,

Defendant.

## PLAINTIFF'S SIX-PERSON JURY DEMAND

      **COMES NOW,** Plaintiffs Melinda Van Stone and Mahmoud Ismail, through undersigned

counsel, and demands a trial by a six-person jury of all issues triable of right by jury and hereby

tenders $150.00 for the jury fee.

                                  Respectfully submitted,

                                  **SALCEDO & COMPANY, LLC**

                                  */s/ Aaqib Khan*
                                  Isidro Salcedo, Esq., Bar No. 150622
                                  Aaqib Khan, Esq., Bar No. 162822
                                  *Attorneys for Plaintiffs*
                                  2990 N. Main St., Ste. 2D
                                  Las Cruces, NM 88001
                                  (575) 993-2676
                                  isidro@salcedoco.com
                                  aaqib@salcedoco.com

1

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
6/13/2025 4:33 PM
KATINA WATSON
CLERK OF THE COURT
Marissa Marquez

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**MELINDA VAN STONE and**
**MAHMOUD ISMAIL,**

      **Plaintiffs,**

v.

**QUIVERA ESTATES HOMEOWNERS**
**ASSOCIATION INC.,**
**CHARLES WONG, and**
**ROGER HART-YORK,**

      **Defendant.**

**No.**    D-202-CV-2025-05416

**Judge**    Franchini, Nancy J.

## <u>COURT-ANNEXED ARBITRATION CERTIFICATION</u>

COMES NOW, Plaintiffs Melinda Van Stone and Mahmoud Ismail, by and through their attorneys of record, Salcedo & Company, LLC (Isidro Salcedo, Esq., and Aaqib Khan, Esq.) pursuant to Second Judicial District Local Rule 2-603, certifies as follows:

_____This party seeks **only a money judgment AND the amount sought does not exceed** fifty thousand dollars ($50,000.00) exclusive of punitive damages, interest, costs and attorney fees.

___X___This party seeks relief **other than a money judgment AND/OR seeks relief in excess of** fifty thousand dollars ($50,000.00) exclusive of punitive damages, interest, costs and attorney fees.

Respectfully submitted,

**SALCEDO & COMPANY, LLC**

/s/ Aaqib Khan
Isidro Salcedo, Esq., Bar No. 150622
Aaqib Khan, Esq., Bar No. 162822
*Attorneys for Plaintiffs*
2990 N. Main St., Ste. 2D
Las Cruces, NM 88001
(575) 993-2676
isidro@salcedoco.com
aaqib@salcedoco.com

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
6/30/2025 1:01 PM
KATINA WATSON
CLERK OF THE COURT
Ethan J Bea

<table>

| SUMMONS | |
|---|---|
| **District Court:** Second Judicial Bernalillo County, New Mexico Court<br><br>**Address:** 400 Lomas Blvd. NW Albuquerque, NM 87102<br><br>**Court Telephone Number:** (505) 841-8400 | **Case Number:** D-202-CV-2025-05416<br><br>**Judge:** Franchini, Nancy J. |
| **STATE OF NEW MEXICO**<br>**COUNTY OF BERNALILLO**<br>**SECOND JUDICIAL DISTRICT COURT**<br><br>**MELINDA VAN STONE and**<br>**MAHMOUD ISMAIL,**<br><br>Plaintiffs,<br><br>v.<br><br>**QUIVERA ESTATES HOMEOWNERS**<br>**ASSOCIATION INC.,**<br>**CHARLES WONG, and**<br>**ROGER HART-YORK,**<br><br>Defendants. | Name: Roger Hart-York<br><br>**Address:** 8200 Via Encantada NE, Albuquerque, NM 87122 |

</table>

### TO THE ABOVE NAMED DEFENDANT(S): Take notice that

    1.    A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

    2.    You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

    3.    You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

    4.    If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

    5.    You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.    If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

Dated at ___Albuquerque_____, New Mexico, this _____ day of ___6/17/2025___,

20____.

Katina Watson

CLERK OF COURT

SECOND JUDICIAL DISTRICT COURT
CLERK OF THE COURT

By: _Maurissa D. Marquez_
Deputy Clerk

/s/ Aaqib Khan
Aaqib Khan, Esq.
*Attorney for Plaintiff*
2990 N. Main St., Ste 2D
Las Cruces, NM 88001
(575) 993-2676
aaqib@salcedoco.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN**[1]

STATE OF *New Mexico*              )
                                   )ss.
COUNTY OF *Bernalillo*             )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in *Bernalillo* county on the *20* day of *June 2025*, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[✓]  to the defendant *Roger Hart-York - personally served at 8200 Via* (used when defendant accepts a copy of *Encantada, NE* summons and complaint or refuses to accept the summons and complaint) *Albq., N.M. 87122*

[ ]  to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (used when service is by mail or commercial courier service).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]  to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (used when the defendant is not presently at place of abode) and by mailing by first class mail to the defendant at _____ (insert defendant's last known mailing address) a copy of the summons and complaint.

[ ]  to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (insert defendant's business address) and by mailing the summons and complaint by first class mail to the defendant at _____ (insert defendant's last known mailing address).

[ ]  to _____, an agent authorized to receive service of process for defendant _____.

[ ]  to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (used when defendant is a minor or an incompetent person).

[ ]    to _____ (*name of person*), _____,
(*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____$154.44_____

_Tommy Martinez_
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this ___20___ day of __June__, __2025__

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title        Notary

State of New Mexico - Notary Public
Patricia Maestas
Commission Number 1039169
My Commission Expires 11/21/25

## USE NOTE

1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.
2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013; as amended by Supreme Court Order No. 13-8300-022, effective for all cases pending or filed on or after December 31, 2013; as amended by Supreme Court Order No. 14-8300-017, effective for all cases pending or filed on or after December 31, 2014.]

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
6/30/2025 1:01 PM
KATINA WATSON
CLERK OF THE COURT
Ethan J Beal

## SUMMONS

| | |
|---|---|
| **District Court:** Second Judicial Bernalillo County, New Mexico Court **Address:** 400 Lomas Blvd. NW Albuquerque, NM 87102 **Court Telephone Number:** (505) 841-8400 | **Case Number:** D-202-CV-2025-05416 **Judge:** Franchini, Nancy J. |
| **STATE OF NEW MEXICO COUNTY OF BERNALILLO SECOND JUDICIAL DISTRICT COURT** **MELINDA VAN STONE and MAHMOUD ISMAIL,** Plaintiffs, v. **QUIVERA ESTATES HOMEOWNERS ASSOCIATION INC., CHARLES WONG, and ROGER HART-YORK,** Defendants. | **Name:** Quivera Estates Homeowners Association Inc. **Address:** P.O. Box 67590 Albuquerque, NM 87193 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

    1.    A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

    2.    You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

    3.    You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

    4.    If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

    5.    You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.    If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

Dated at _____Albuquerque_____, New Mexico, this _____ day of __6/17/2025__,
20____.

Katina Watson

CLERK OF COURT

SECOND JUDICIAL DISTRICT COURT
CLERK OF THE COURT

By: *Marissa D. Marquez*
Deputy Clerk

/s/ *Aaqib Khan*
Aaqib Khan, Esq.
*Attorney for Plaintiff*
2990 N. Main St., Ste 2D
Las Cruces, NM 88001
(575) 993-2676
aaqib@salcedoco.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN**[1]

STATE OF *New Mexico*        )
                             )ss.
COUNTY OF *Bernalillo*       )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in *Bernalillo* county on the *20* day of *June* *2025*, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ *(used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint)*

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA *(used when service is by mail or commercial courier service).*

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, *(used when the defendant is not presently at place of abode)* and by mailing by first class mail to the defendant at _____ *(insert defendant's last known mailing address)* a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ *(insert defendant's business address)* and by mailing the summons and complaint by first class mail to the defendant at _____ *(insert defendant's last known mailing address).*

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ *(used when defendant is a minor or an incompetent person).*

Quivera Estates Homeowners Association, Inc.

☒ to _Ximena Ortega_ (name of person), _Authorized Agent_
(title of person authorized to receive service. Use this alternative when the defendant is a
corporation or an association subject to a suit under a common name, a land grant board of
trustees, the State of New Mexico or any political subdivision). 8700 A. Education Place, NW
Albuquerque, N.M. 87114

Fees: _$165.25_

_Tommy Martinez_
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _20_ day of _June_, _2025_

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title   _Notary_

State of New Mexico - Notary Public
Patricia Maestas
Commission Number 1039169
My Commission Expires 11/21/25

### USE NOTE

1.    Unless otherwise ordered by the court, this return is not to be filed with the court
prior to service of the summons and complaint on the defendant.
2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the
signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective
March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme
Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013;
as amended by Supreme Court Order No. 13-8300-022, effective for all cases pending or filed on
or after December 31, 2013; as amended by Supreme Court Order No. 14-8300-017, effective for
all cases pending or filed on or after December 31, 2014.]

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
6/30/2025 1:01 PM
KATINA WATSON
CLERK OF THE COURT
Ethan J Beal

| SUMMONS | |
|---|---|
| **District Court:** Second Judicial Bernalillo County, New Mexico Court<br><br>**Address:** 400 Lomas Blvd. NW Albuquerque, NM 87102<br><br>**Court Telephone Number:** (505) 841-8400 | **Case Number:**  D-202-CV-2025-05416<br><br>**Judge:**  Franchini, Nancy J. |
| **STATE OF NEW MEXICO<br>COUNTY OF BERNALILLO<br>SECOND JUDICIAL DISTRICT COURT**<br><br>**MELINDA VAN STONE and<br>MAHMOUD ISMAIL,**<br><br>Plaintiffs,<br><br>v.<br><br>**QUIVERA ESTATES HOMEOWNERS<br>ASSOCIATION INC.,<br>CHARLES WONG, and<br>ROGER HART-YORK,**<br><br>Defendants. | **Name: Charles Wong**<br><br>**Address: 8104 Via Encantada NE,<br>Albuquerque, NM 87122** |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1.      A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.      You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.      You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.    If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer. You may contact the State Bar of New Mexico
for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

    Dated at _____, New Mexico, this _____ day of _____,
20_____.

Katina Watson

CLERK OF COURT

SECOND JUDICIAL DISTRICT COURT
CLERK OF THE COURT

By: _____
Deputy Clerk

/s/ Aaqib Khan
Aaqib Khan, Esq.
*Attorney for Plaintiff*
2990 N. Main St., Ste 2D
Las Cruces, NM 88001
(575) 993-2676
aaqib@salcedoco.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN[1]**

STATE OF *New Mexico* )
)ss.
COUNTY OF *Bernalillo* )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in *Bernalillo* county on the *20* day of *June 2025*, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

*(check one box and fill in appropriate blanks)*

[X] to the defendant *Charles Wong* — *Posted on the Front door w/ pictures* (used when defendant accepts a copy of *Defendant* summons and complaint or refuses to accept the summons and complaint) *refuses to open Front door at 8104 Via Encantada NE. Albuquerque, N.M. 87122*

[ ] to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (used when service is by mail or commercial courier service).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ] to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (used when the defendant is not presently at place of abode) and by mailing by first class mail to the defendant at _____ (insert defendant's last known mailing address) a copy of the summons and complaint.

[ ] to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (insert defendant's business address) and by mailing the summons and complaint by first class mail to the defendant at _____ (insert defendant's last known mailing address).

[ ] to _____, an agent authorized to receive service of process for defendant _____

[ ] to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (used when defendant is a minor or an incompetent person).

[ ]    to _____ (*name of person*), _____,
(*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____ $ 154.43 _____

_Tommy Martinez_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this __20__ day of __June__, __2025__

_____
Judge, notary or other officer
authorized to administer oaths

_____ Notary
Official title

State of New Mexico - Notary Public
Patricia Maestas
Commission Number 1039169
My Commission Expires 11/21/25

### USE NOTE

1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013; as amended by Supreme Court Order No. 13-8300-022, effective for all cases pending or filed on or after December 31, 2013; as amended by Supreme Court Order No. 14-8300-017, effective for all cases pending or filed on or after December 31, 2014.]